**Slip Op. 08-42**

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GLEASON INDUSTRIAL PRODUCTS, INC. and PRECISION PRODUCTS, INC., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | |
| UNITED STATES, | Court No. 06-00089 |
| Defendant, | |
| and | |
| CENTRAL PURCHASING, LLC, | |
| Defendant-Intervenor. | |

## OPINION

[Commerce's remand results are sustained in part and remanded in part].

Date: April 14, 2008

Crowell & Moring, LLP (Matthew P. Jaffe) for Plaintiffs Gleason Industrial Products, Inc. and Precision Products, Inc.

Adduci, Mastriani & Schaumberg, LLP (Louis S. Mastriani, William C. Sjoberg) for Defendant-Intervenor Central Purchasing, LLC.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Stephen C. Tosini); Office of the Chief Counsel, U.S. Department of

Commerce (Carrie Lee Owens), of counsel, for Defendant United States.

**GOLDBERG, Senior Judge**:  This matter is before the Court following its grant of the U.S. Department of Commerce's ("Commerce") voluntary remand request.  See Gleason Indus. Prods., Inc. v. United States, Slip Op. 07-40, 2007 WL 781196 (CIT Mar. 16, 2007).  On remand, Commerce held that Central Purchasing, LLC's ("Central Purchasing") welding carts were within the scope of an antidumping duty order in place against certain hand trucks manufactured in China.  For the reasons that follow, Commerce's results are sustained in part and remanded in part.

## I.    BACKGROUND

In 2004, Commerce entered an antidumping duty order on certain varieties of hand trucks manufactured in China.  See Hand Trucks and Certain Parts Thereof from the People's Republic of China, 69 Fed. Reg. 70,122 (Dep't Commerce Dec. 2, 2004) (notice of antidumping duty order).  At that time, Central Purchasing asked Commerce to determine whether two of its welding carts, models 93851 and 43615, were within the scope of this order.  Upon investigation, Commerce found that Central Purchasing's carts were outside the scope of the antidumping duty order.  See Final Scope Ruling for Central Purchasing, LLC's Two Models of Welding Carts (Feb. 15, 2006).

Plaintiffs Gleason Industrial Products, Inc., and Precision Products, Inc. (collectively "Gleason") challenged this determination and filed a motion for judgment on the agency record.  Upon review of Gleason's motion, Commerce requested a voluntary remand to consider whether:  (1) Central Purchasing's welding carts possessed a projecting edge capable of sliding under a load;[1] and (2) whether Central Purchasing's welding carts were within the scope of the antidumping duty order due to its express mention of cylinder hand trucks.  The Court granted Commerce's request.  See Gleason, 2007 WL 781196, at *5.  On remand, Commerce determined that Central Purchasing's welding carts were included within the scope of the order because they possessed a projecting edge capable of sliding under a load, and also qualified as cylinder hand carts under the order's scope language.  Central Purchasing appeals this remand determination.[2]

---

[1] In its voluntary remand request, Commerce stated that it wanted to review whether the cart's projecting edges "easily" slid under a load for the purposes of moving or lifting the load.  In Commerce's remand results, the agency conceded that the term "easily" is not part of the scope language and that consideration of the ease with which the edge slides under an item is not a relevant consideration.  See Results of Redetermination on Remand Pursuant to Gleason Indus. Prods., Inc. v. United States, Slip Op. 07-40 (CIT Mar. 16, 2007), at 14 ("Remand Determination").

[2] Central Purchasing also argues that Gleason failed to exhaust its administrative remedies and that Commerce failed to maintain a complete administrative record.  These arguments lack merit.

(footnote continued)

## II.    JURISDICTION & STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  The Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1) (2000)).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  However, substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  In sum, this standard asks only whether Commerce's interpretation is reasonable.  See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).  However, Commerce's findings must be "reached by 'reasoned decisionmaking,' including an examination of the relevant data and a reasoned explanation supported by a stated connection

---

The exhaustion argument was rendered moot when this Court granted Commerce's voluntary remand request.  See Gleason, 2007 WL 781196, at *5.  The administrative record argument has also been addressed because the Court found no error when it previously denied Central Purchasing's Motion to Supplement the Administrative Record.

between the facts found and the choice made." See Husteel Co. v. United States, 31 CIT __, __, 491 F. Supp. 2d 1283, 1291 (2007) (citing Elec. Consumers Res. Council v. Fed. Energy Regulatory Comm'n, 747 F.2d 1511, 1513 (D.C. Cir. 1984)).

### III.  DISCUSSION

On remand, Commerce found Central Purchasing's welding carts were within the scope of the antidumping duty order because the carts possessed the required physical characteristics and qualified as cylinder welding carts.  The Court's analysis focuses solely on the first determination because regardless of whether these carts qualify as cylinder welding carts, they must also possess the required physical characteristics to be within the order's scope.[3]  Pursuant to the order, hand trucks must have four physical components:  (1) a vertical frame; (2) a handle or handles; (3) two or more wheels; and (4) a projecting edge capable of sliding under a load.  See Hand Trucks from China, 69 Fed. Reg. at 70,122.  All parties agree that Central Purchasing's carts possess the first three components.  Central Purchasing, however, argues that its welding carts lack a projecting edge.  Under the antidumping

---

[3] Commerce concedes this point in its Remand Determination noting that "[a]s required by the Department's regulations, the Department must analyze the physical characteristics of Central Purchasing's welding carts with the characteristics of hand trucks covered by the order regardless of whether the welding carts are cylinder hand trucks." Remand Determination, at 14.

duty order, a projecting edge (or "toe plate") is defined as "a horizontal projecting edge or edges . . . perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame." Id. This projecting edge must also "slide[] under a load for the purposes of lifting and moving a load." Id. The issue of whether Central Purchasing's welding carts are within the scope of this order hinges on whether Commerce's conclusion that these carts possess projecting edges capable of sliding under a load is supported by substantial evidence.

### A. The Projecting Edges' Physical Characteristics

On remand, Commerce examined whether the welding carts' "storage trays" qualified as projecting edges. The evidence submitted by both parties demonstrates that these trays extend out at of a height of roughly 1 1/4 to 1 3/4 inches from the bottom of their respective vertical frames. Central Purchasing argued that because these trays are not flush with the bottom of the carts' vertical frames they fall outside the order's scope. Commerce disagreed.[4]

---

[4] Central Purchasing also claims that its models have restrictive external bars which place its carts outside the order's scope. However, these external bars do not impact a projecting edge's ability to slide under a load, but merely limit the size of load the cart can slide under. At best, these bars constitute an additional feature, which the scope order makes clear does not remove a cart from the antidumping duty order's application. See Hand Trucks from China, 69 Fed. Reg. at 70,122.

To support its determination, Commerce relied on the language of both the antidumping duty order and the International Trade Commission's ("ITC") final investigative report.  Under the order, a projecting edge is "a horizontal projecting edge or edges, or toe plate, perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame."  Id.  Similarly, the ITC's final investigative report defined a projecting edge as: "[a] load support nose member . . . [that] is connected to the lower front portion of the frame."  Hand Trucks and Certain Parts Thereof from China, USITC Pub. 3737, Inv. No. 731-TA-1059 (Final), at I-4, N.12 (Nov. 2004).  According to this language, a projecting edge is not required to be flush with the vertical frame to fall within the order's scope.  As the welding cart trays are both connected to and perpendicular or angled toward the vertical frame of both welding cart models, substantial evidence supports Commerce's conclusion.

**B.  The Projecting Edges' Ability to Slide Under Loads**

Commerce also concluded that the projecting edges of models 93851 and 43615 are capable of sliding under a load if the load is slightly tipped or tipped.[5]  See Results of Redetermination on

[5] In the past, Commerce has drawn a distinction between a projecting edge's ability to slide under a load, and a

(footnote continued)

Remand Pursuant to Gleason Indus. Prods., Inc. v. United States, Slip Op. 07-40 (CIT Mar. 16, 2007), at 11—12 ("Remand Determination").  Commerce found that the downward facing vertical edges of the carts' projecting edges, or the outside edges that would actually meet a load, assist users in sliding the welding carts under loads.  Id.  However, Commerce overlooked a critical distinction between the two models of Central Purchasing's welding carts.  While models 93851 and 43615 are similar in many aspects, the vertical edges of their projecting edges are different.  Model 93851's vertical edge is turned downward, but model 43615's vertical edge is not.  See id. at 23.  In light of this distinction, Commerce's conclusions regarding each model must be evaluated separately.

---

projecting edge's ability to have a load slid across or onto it. See Final Scope Ruling:  Antidumping Duty Order on Hand Trucks From the People's Republic of China (A-570-891); Expeditors Tradewin, LLC, on behalf of Ameristep Corp., Inc. (May 15, 2007); see also Def. Intervenor's. Br. at 29 n.13. According to Commerce, if a cart's projecting edge can slide under a load, the cart will be within the scope of the order. If the cart's projecting edge is only capable of having a load slid across or onto it, the cart will not fall within the order's scope.  In the present case, Commerce found that Central Purchasing's welding carts can perform both functions as the welding carts' ability to have a load slid across their projecting edges does not prevent these edges from also sliding under a load.  See Remand Determination, at 25—26.  In short, the presence of this additional "sliding across" function does not place Central Purchasing's welding carts outside the order's scope.  See Hand Trucks from China, 69 Fed. Reg. at 70,122.

### i. Model 93851

The vertical edge of model 93851's projecting edge slopes downward toward potential loads.  Model 93851's projecting edge is elevated only slightly and not to the degree to render tipping a load to allow the projecting edge to slide under implausible.  This model's projecting edge is 1 1/4 inches thick making it durable and capable of lifting and moving a load as required under the order's scope language.  See id. at 23—24.  Additionally, no warnings or user limitations indicate that this model is prohibited from sliding under a load, which can provide evidence of the intended purpose of an alleged hand truck's projecting edge.  See Vertex Int'l, Inc. v. United States, Slip Op. 06-10, 2006 WL 160295, at *5 (CIT Jan. 19, 2006).  These facts provide substantial evidence in support of Commerce's determination that model 93851 falls within the scope of the antidumping duty order.

### ii. Model 43615

Substantial evidence does not support Commerce's conclusions regarding the ability of model 43615's projecting edge to slide under a load.  In contrast to model 93815, model 43615's projecting edge functions as a "box" for holding welding equipment which consists of a flat tray surrounded by four upturned walls, and its vertical edge does not face downward.  Central Purchasing specifically noted that this model's vertical

edge "cannot be described as facing downward because all four sides of the toe plate form a tray with the sides upturned." Remand Determination, at 23—24.  Commerce attempted to rebut Central Purchasing's argument by claiming it relied on the cart's generalized features and that this cart is substantially similar to model 93851.  See id. at 27.  However, substantial evidence requires "a reasoned explanation supported by a stated connection between the facts found and the choice made." Husteel Co., 31 CIT at __, 491 F. Supp. 2d at 1291 (citing Elec. Consumers Res. Council, 747 F.2d at 1513).  Commerce specifically relied on its erroneous evaluation of model 43615's vertical edge when it concluded that "[b]ecause the vertical edge of the toe plate faces downward, the user can both slide a load onto the welding cart and slide the toe plate or projecting edge under a load without obstruction."  Remand Determination, at 11—12.  In ignoring the substantial design differences between the two models, Commerce's analysis of model 43615 is unsupported in its present form and its determination that the cart falls within the order's scope lacks substantial evidence.

## IV.  CONCLUSION

In light of the foregoing, this Court sustains Commerce's remand results in part and remands in part.  On remand, Commerce must evaluate whether model 43615's projecting edge is capable of sliding under a load for the purpose of lifting and moving

that load.  If Commerce is unable to do so, it must find that model 43615 falls outside the scope of the antidumping duty order.  A separate order shall be entered accordingly.

                                        /s/ Richard W. Goldberg
                                        **Richard W. Goldberg**
                                        **Senior Judge**

**Date:**          **April 14 , 2008**
                 **New York, New York**